In the

# United States Court of Appeals
## For the Seventh Circuit

_____

No. 17-3409

DEAN GUENTHER,

*Petitioner-Appellant,*

*v.*

MATTHEW MARSKE, Warden,

*Respondent-Appellee.*

_____

Appeal from the United States District Court
for the Western District of Wisconsin.
No. 17-cv-231 — **Barbara B. Crabb**, *Judge.*

_____

ARGUED SEPTEMBER 30, 2020 — DECIDED MAY 12, 2021

_____

Before SYKES, *Chief Judge*, and WOOD and BRENNAN, *Circuit Judges.*

SYKES, *Chief Judge.* In 2005 Dean Guenther was convicted of a federal firearms crime in Minnesota and was sentenced as an armed career criminal based in part on his prior Minnesota burglary convictions. His direct appeal failed in the Eighth Circuit, as did his petition for collateral review under 28 U.S.C. § 2255. He is currently serving his lengthy sentence in a federal prison in Wisconsin. In 2017 Guenther

sought habeas relief under 28 U.S.C. § 2241 in the Western District of Wisconsin. Relying on *Mathis v. United States*, 136 S. Ct. 2243 (2016), and *United States v. McArthur*, 850 F.3d 925 (8th Cir. 2017), he argued that his sentence is unlawful because his Minnesota burglary convictions are not "violent felonies" under the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e). The district judge denied the petition.

We reverse. A § 2255 motion in the sentencing court is normally the exclusive method to collaterally attack a federal sentence, but the "saving clause" in § 2255(e) provides a limited exception.[1] The clause permits a prisoner to seek § 2241 habeas relief in the district where he is confined if "the remedy by motion is inadequate or ineffective to test the legality of his detention." § 2255(e). We have construed the saving clause to preserve a path for § 2241 relief in a narrow set of circumstances—namely, when the prisoner relies on an intervening statutory decision announcing a new, retroactive rule that could not have been invoked in his first § 2255 motion *and* the error is serious enough to amount to a miscarriage of justice. *See Chazen v. Marske*, 938 F.3d 851, 856 (7th Cir. 2019) (synthesizing the doctrine).

Our decision in *Chazen* is analogous in all material respects and makes clear that Guenther has satisfied most of the requirements for the saving-clause gateway to § 2241. The only question left unanswered by *Chazen* is whether Guenther's ACCA-enhanced sentence amounts to a miscar-

---

[1] We usually refer to § 2255(e) as the "savings clause," but the leading authority on legal style recommends "saving clause" as the more precise term. *Saving Clause*, GARNER'S DICTIONARY OF LEGAL USAGE (3d ed. 2011); *see also McCarthan v. Dir. of Goodwill Indus.-Suncoast, Inc.*, 851 F.3d 1076, 1081–82 (11th Cir. 2017) (en banc).

riage of justice. That question folds into the merits of whether Guenther's Minnesota burglary convictions are ACCA predicates.

The parties disagree on whether the answer to this question should come from the law of our circuit (the circuit of confinement) or the Eighth Circuit (the circuit of conviction). We declined to settle the choice-of-law debate in *Chazen* because the government argued in the district court that the law of the circuit of confinement—this circuit—should control. *Id.* at 860. That position, if accepted, meant no relief. Although the Eighth Circuit had held in *McArthur* that Minnesota burglary is not an ACCA predicate, our circuit had not addressed the question. By the time *Chazen* reached this court, however, the tables had turned. *McArthur*'s validity had become clouded, and we had broadly concluded in *Van Cannon v. United States*, 890 F.3d 656, 665 (7th Cir. 2018), that Minnesota burglary is not an ACCA predicate. *Chazen*, 938 F.3d at 860.

In *Chazen* we held the government to the position it took in the district court and applied the law of this circuit. *Id.* at 860–63. We follow the same approach here. Under *Van Cannon*, Guenther's Minnesota burglary convictions are not ACCA predicates. We remand with instructions to grant the habeas petition.

## I. Background

In May 2005 a federal jury in the District of Minnesota convicted Guenther of possessing a firearm as a felon in violation of 18 U.S.C. § 922(g)(1). The offense usually carries a maximum sentence of ten years in prison, *id.* § 924(a)(2), but the ACCA increases the penalty to a 15-year minimum

and a maximum of life in prison if the defendant has three prior convictions for a "violent felony," *id.* § 924(e)(1). Guenther's presentence report ("PSR") identified four possible ACCA predicates: two convictions for first-degree burglary (in 1990 and 1992), one for second-degree burglary (in 1986), and one for kidnapping (in 1990), all under Minnesota law.

The ACCA defines "violent felony" as any federal or state crime punishable by a prison term exceeding one year that "has as an element the use, attempted use, or threatened use of physical force against the person of another," *id.* § 924(e)(2)(B)(i) (the "elements clause"); *or* "is burglary, arson, or extortion," *id.* § 924(e)(2)(B)(ii) (the "enumerated offenses clause"; *or* "otherwise involves conduct that presents a serious potential risk of physical injury to another," *id.* (the "residual clause"). At the time of sentencing, Guenther's burglary convictions qualified as ACCA predicates under the enumerated-offenses clause, and his kidnapping conviction qualified under the residual clause.[2] The district judge applied the enhanced penalties under the ACCA and imposed a prison term of 327 months, the top of the range under the Sentencing Guidelines.

The Eighth Circuit affirmed on direct appeal. In 2008 Guenther filed a pro se motion seeking collateral relief under § 2255, raising a claim of ineffective assistance of counsel and also challenging his ACCA-enhanced sentence. The judge denied the motion and declined to issue a certificate of appealability. The Eighth Circuit likewise declined to certify the case for appeal.

---

[2] Each of these crimes is punishable by a prison term exceeding one year.

The legal landscape shifted following Guenther's § 2255 motion. As we explained in *Chazen*, the doctrinal path is quite circuitous. Because this case is materially identical, a shortened version will suffice here. To understand the relevant legal developments requires a bit of background about Minnesota's burglary statute, so we begin there.

The Minnesota crimes of first-degree and second-degree burglary are set forth in a single statute and start from the same basic definition, then add different sets of aggravating circumstances. More specifically, "[w]hoever enters a building without consent and with intent to commit a crime, or enters a building without consent and commits a crime while in the building, either directly or as an accomplice," commits second-degree burglary if certain aggravating circumstances are present (the second-degree aggravators mostly relate to the nature of the burglarized premises). MINN. STAT. § 609.582(2)(a). The same basic act is elevated to first-degree burglary if more serious aggravating circumstances are present (the first-degree aggravators mostly relate to the use of a weapon or the presence of a person in the burglarized premises). *Id.* § 609.582(1).

To qualify as ACCA predicates, the elements of Guenther's burglary crimes must categorically match those of "generic burglary," which the Supreme Court has said "contains at least the following elements: an unlawful or unprivileged entry into, or remaining in, a building or other structure, with intent to commit a crime." *Taylor v. United States*, 495 U.S. 575, 598 (1990). This categorical approach, as is now well understood, entails a comparison of legal elements of the crimes; the underlying facts do not matter. At the time of Guenther's § 2255 motion in 2008, Eighth Circuit

precedent supported a categorical match. *Cf. United States v. LeGrand*, 468 F.3d 1077, 1081 (8th Cir. 2006) (holding that Minnesota burglary qualifies under the analogous "crime of violence" definition in the Sentencing Guidelines).

Seven years after Guenther's § 2255 motion, the Supreme Court held that the ACCA's residual clause is unconstitutionally vague. *Johnson v. United States*, 576 U.S. 591, 597–98 (2015). That knocked out Guenther's kidnapping conviction as an ACCA predicate. His qualifying convictions were down to three.

Then came *Mathis*, 136 S. Ct. 2243, which clarified *Taylor*'s categorical approach for classifying prior convictions for purposes of recidivist sentencing enhancements. *Mathis* addressed the common problem of alternatively phrased criminal statutes—a problem first identified in *Taylor* and *Shepard v. United States*, 544 U.S. 13, 25–26 (2005), and elaborated in *Descamps v. United States*, 570 U.S. 254, 262–63 (2013). Briefly, an alternatively phrased criminal statute may list different sets of *elements* (thus defining more than one crime) or it may simply list different *factual means* of committing an element of a single crime. If the statutory alternatives are separate elements, then the statute defines multiple separate crimes and is said to be "divisible," which permits the court to look to the charging document and a limited set of additional sources "to determine what crime, with what elements, [the] defendant was convicted of." *Mathis*, 136 S. Ct. at 2249. If, on the other hand, the statutory alternatives are simply different factual means of committing the crime, then the statute is said to be "indivisible" and the court must find a categorical match between its elements and those of the generic offense. *Id.* at 2248.

*Mathis* effectively "narrowed the range of state statutes that qualify as violent felony predicates," leading the Eighth Circuit to rethink its understanding of Minnesota burglary. *Chazen*, 938 F.3d at 855. In *McArthur* the court concluded that Minnesota's third-degree burglary offense, which appears in the same statute as the first- and second-degree offenses, sweeps more broadly than generic burglary and thus does not qualify as an ACCA violent felony. 850 F.3d at 939–40.

The third-degree offense is defined in similar language as the first- and second-degree crimes but without the aggravating circumstances:

> Whoever enters a building without consent and with intent to steal or commit any felony or gross misdemeanor while in the building, or enters a building without consent and steals or commits a felony or gross misdemeanor while in the building, either directly or as an accomplice, commits burglary in the third degree … .

MINN. STAT. § 609.582(3). This statutory phrasing, the Eighth Circuit held, describes two alternative factual means of committing the crime. *McArthur*, 850 F.3d at 938. That is, Minnesota third-degree burglary is committed by *either* an unprivileged entry into a building with intent to commit a crime *or* an unprivileged entry followed by the commission of a crime while remaining in the building; these alternatives are different factual means of committing the offense, not separate elements. *Id.*

The Eighth Circuit went on to conclude that the statute is overbroad because the second alternative does not include the *Taylor* generic-offense requirement of contemporaneous

intent—i.e., the intent to commit a crime *at the moment of* the unprivileged entry or unprivileged "remaining in" the building. *Id.* at 939–40. Because the Minnesota third-degree provision is indivisible, the court held that a conviction under it does not count as an ACCA predicate. The court later applied the same reasoning to Minnesota's second-degree burglary offense, ruling that it too does not qualify as an ACCA violent felony. *United States v. Crumble*, 878 F.3d 656, 661–62 (8th Cir. 2018).

We followed the Eighth Circuit's lead in *Van Cannon*, holding that "Minnesota's second-degree burglary statute is indivisible, covers more conduct than the generic offense, and thus is not an ACCA predicate." 890 F.3d at 663. Like the Eighth Circuit, we observed that the second alternative factual means of committing a Minnesota burglary lacks the contemporaneous-intent requirement required for generic burglary. *Id.* at 664–65. But we took the analysis one step further, explaining that "[t]he second alternative is just a trespass (a nonconsensual entry) followed by the commission of a crime within the trespassed building at some point thereafter." *Id.* at 664. And that, in turn, meant that "the trespass-plus-crime alternative in the Minnesota statute doesn't require proof of intent to commit a crime *at all*—not at *any* point during the offense conduct." *Id.*

After *McArthur* but before *Van Cannon*, Guenther sought a writ of habeas corpus under § 2241 in the Western District of Wisconsin. Citing *Mathis* and *McArthur*, he argued that his ACCA-enhanced sentence is unlawful. The government conceded that if *McArthur* applied, Guenther would not have the required three ACCA predicates. But the government maintained that Guenther had to establish that he was

wrongfully sentenced under the law of *this circuit*—the circuit of confinement—and had not done so. The district judge sidestepped the choice-of-law issue, concluding instead that *Mathis* does not apply retroactively to cases on collateral review.

One last doctrinal shift was yet to come. In *Quarles v. United States*, 139 S. Ct. 1872 (2019), the Supreme Court clarified the intent requirement for *Taylor's* generic burglary—or, more specifically, the version of the generic offense that consists of an unprivileged entry into a building followed by the commission of a crime while remaining in the building. The Court held that "generic remaining-in burglary occurs when the defendant forms the intent to commit a crime *at any time* while unlawfully remaining in a building or structure." *Id.* at 1880 (emphasis added). *Quarles* thus undermined *McArthur's* rationale regarding the necessity of contemporaneous intent. The Eighth Circuit has since recognized that *McArthur* may have been abrogated entirely. *See Raymond v. United States*, 933 F.3d 988, 992 (8th Cir. 2019) (acknowledging ambiguity following *Quarles* and remanding to the district court to consider *McArthur*'s vitality).

Though *Quarles* unsettled the Eighth Circuit's understanding of Minnesota burglary, *Van Cannon* remains good law. As we explained in *Chazen*, "we can say with confidence … that *Quarles* did not abrogate *Van Cannon*'s conclusion that Minnesota burglary is broader than generic burglary because the state statute does not require proof of any intent at *any point*." 938 F.3d at 860. Indeed, the Supreme Court declined to address this alternative rationale, leaving *Van Cannon* intact. *See Quarles*, 139 S. Ct. at 1880 n.2.

Guenther's appeal was on hold during the last steps of this doctrinal evolution. It is now ready for decision.

## II. Discussion

As we've explained, a federal prisoner may seek collateral review of his sentence by motion under § 2255, and the remedy is ordinarily exclusive and limited to one motion. The statute permits a second or successive motion only if the prisoner's claim is based on "newly discovered evidence" or "a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable." § 2255(h)(1)–(2).

The statutory saving clause, § 2255(e), permits another round of collateral review through a petition for habeas corpus under § 2241, but only if the remedy by motion is "inadequate or ineffective to test the legality of [the prisoner's] detention." We've held that the § 2255 remedy is not "inadequate or ineffective" unless some structural impediment prevented its use. *Higgs v. Watson*, 984 F.3d 1235, 1239–40 (7th Cir. 2021); *Lee v. Watson*, 964 F.3d 663, 666–67 (7th Cir. 2020); *Purkey v. United States*, 964 F.3d 603, 614–15 (7th Cir. 2020).

We explained in *Chazen* that for statutory claims, our circuit's saving-clause caselaw establishes a three-part test for the narrow § 2255(e) exception:

> To pursue relief under § 2241, a petitioner must establish that "(1) the claim relies on a statutory interpretation case, not a constitutional case, and thus could not have been invoked by a successive § 2255 motion; (2) the petitioner could not have invoked the decision in his first

> § 2255 motion and the decision applies retroactively; and (3) the error is grave enough to be deemed a miscarriage of justice."

938 F.3d at 856 (quoting *Beason v. Marske*, 926 F.3d 932, 935 (7th Cir. 2019)).

Our test has its complexities and raises some difficult questions that to date remain unanswered.[3] Fortunately, *Chazen* clears away most of the legal underbrush in its application here. Like this case, *Chazen* also involved a saving-clause challenge to an ACCA-enhanced sentence based on Minnesota burglary. Our decision there makes clear that the first two conditions for § 2241 relief weigh

---

[3] For example, we have not been consistent about whether the change in law must come from the Supreme Court or can come from a court of appeals. *See Chazen v. Marske*, 938 F.3d 851, 864–65 (7th Cir. 2019) (Barrett, J., concurring). Though we have at times said that the new decision must come from the Supreme Court, we have elsewhere said that a new circuit-level decision will suffice. *Id.* (citing *Beason v. Marske*, 926 F.3d 932, 935 (7th Cir. 2019)). The Fourth and Ninth Circuits also permit saving-clause petitions based on new circuit-level decisions. *United States v. Wheeler*, 886 F.3d 415, 420–21 (4th Cir. 2018); *Alaimalo v. United States*, 645 F.3d 1042, 1048 (9th Cir. 2011). In contrast, the Fifth and Sixth Circuits have rejected this view. *Hueso v. Barnhart*, 948 F.3d 324, 326 (6th Cir. 2020); *Garland v. Roy*, 615 F.3d 391, 394 (5th Cir. 2010).

Our cases also do not clearly explain what it means to be "new" in this context. We have used at least three different standards, asking whether the petitioner relies on (1) a "new *rule*" that "could not have been invoked" in earlier proceedings; (2) a new *decision* that could not be invoked at the § 2255 stage; or (3) a "newly decided case of statutory interpretation" and the claim was "foreclosed by binding precedent" in the circuit of conviction on direct appeal and previously on collateral review. *Chazen*, 938 F.3d at 861–62 (collecting cases) (quotation marks omitted).

decidedly in Guenther's favor. First, Guenther's claim relies at least in part on *Mathis*, a statutory-interpretation case that "is 'new' as a functional and practical matter" because it "injected much-needed clarity and direction into the law" regarding the application of the categorical approach. *Chazen*, 938 F.3d at 862. Indeed, *Mathis* spurred our circuit and the Eighth Circuit to revisit the question whether Minnesota burglary is a categorical match to generic burglary. *See id.* (citing *Van Cannon*, 890 F.3d at 664; *McArthur*, 850 F.3d at 938).

Second, it would have been futile before *Mathis* for Guenther to raise his new arguments in his first § 2255 motion because Eighth Circuit precedent was firmly against him at that point. *See id.* (describing precedent in the Eighth Circuit "concluding that Minnesota burglary qualified as a violent felony for federal sentencing purposes"). Moreover, the government does not dispute that *Mathis* applies retroactively to cases on collateral review. *See id.* at 863 (noting that the second prong was met "where the government has conceded that *Mathis* is retroactive" and where the argument was "so clearly foreclosed by the law of [the petitioner's] circuit of conviction at the time of his original § 2255 petition"). Guenther thus has satisfied the first two saving-clause requirements.

That leaves only the miscarriage-of-justice inquiry. We have held that a "fundamental sentencing defect"— including an erroneous ACCA-enhanced sentence—amounts to a "miscarriage of justice." *Light v. Caraway*, 761 F.3d 809, 813 (7th Cir. 2014) (quotation marks omitted). Here the question turns on whether Guenther's Minnesota burglary convictions are violent felonies. This, in turn, brings the

knotty choice-of-law question to the fore. Guenther was convicted, sentenced, and sought § 2255 relief in the Eighth Circuit, but his place of confinement is in the Western District of Wisconsin and he properly filed his § 2241 habeas petition there. *See Webster v. Daniels*, 784 F.3d 1123, 1144 (7th Cir. 2015) (en banc) (citing *Rumsfeld v. Padilla*, 542 U.S. 426 (2004)). *Chazen* leaves unanswered whether we should evaluate the miscarriage-of-justice inquiry based on our own precedent as the circuit of confinement or the Eighth Circuit's precedent as the circuit of conviction.

The difficulty of the choice-of-law conundrum is magnified by the shifting legal landscape since *Quarles*. *Van Cannon* remains good law, so the law is clear in our circuit that Minnesota burglary is not a violent felony under the ACCA. And though the Eighth Circuit once held as much, it has since recognized that *Quarles* undermined *McArthur*— perhaps abrogated the decision entirely. *See Raymond*, 933 F.3d at 992; *see also Chazen*, 938 F.3d at 860 (noting that *Raymond* "observ[ed] without deciding that … *Quarles* may have abrogated *McArthur*"). The upshot is that (1) Seventh Circuit precedent provides relief and (2) the Eighth Circuit's current position on Minnesota burglary following *Quarles* is at best unclear.[4]

No circuit has squarely addressed the choice-of-law question in these circumstances, but there are considerations pointing in both directions. The concurrence in *Chazen*

---

[4] District judges in the District of Minnesota have since adopted *Van Cannon*'s reasoning. *See, e.g.*, *United States v. Raymond*, 466 F. Supp. 3d 1008, 1014 (D. Minn. 2020); *United States v. Bugh*, 459 F. Supp. 3d 1184, 1200 (D. Minn. 2020). The government has not appealed either decision.

argued that the law of the circuit of conviction should apply—much like it does for a § 2255 motion—so that habeas relief will not turn on "the fortuitous placement of a prisoner by the Bureau of Prisons." *Chazen*, 938 F.3d at 865 (Barrett, J., concurring) (quoting *Hernandez v. Gilkey*, 242 F. Supp. 2d 549, 554 (S.D. Ill. 2001)). On the other hand, the Sixth Circuit recently suggested that applying the law of the circuit of confinement "comports with the background norm that each court should apply its own precedent on the meaning of federal law." *Hueso v. Barnhart*, 948 F.3d 324, 337 (6th Cir. 2020).

We need not settle the debate here. In *Chazen* we declined to reach the choice-of-law question because the government took "the position in the district court that the law of this circuit governs the merits" of the claim. 938 F.3d at 860. The same is true in this case.

The government now argues—for the first time on appeal—that Guenther must point to favorable precedent in *both* circuits. It's one thing for the government to take different positions in different courts for different defendants. It's quite another to take inconsistent positions for the same defendant at different stages in his case. We therefore hold the government to its earlier litigation position, like we did in *Chazen*, and apply our circuit's law to the merits of this appeal.

And under our caselaw, Guenther's Minnesota burglary convictions are not violent felonies. *See Van Cannon*, 890 F.3d at 665. Accordingly, his ACCA-enhanced sentence amounts to a miscarriage of justice, and he is entitled to habeas relief under § 2241. We therefore REVERSE the judgment and REMAND with instructions to grant Guenther's § 2241 peti-

tion and transfer the case to the District of Minnesota for resentencing.